CANADY, Appellant,

v.

CENTRAL BENEFITS MUTUAL INSURANCE COMPANY, Appellee.

[Cite as *Canady v. Central Benefits Mut. Ins. Co.* (1991), 71 Ohio App.3d 363.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–856.

Decided March 19, 1991.

**364**

*Wolske & Blue, Walter J. Wolske* and *Michael S. Miller,* for appellant.

*Baker & Hostetler, Randall S. Rabe* and *Jeffrey T. Williams,* for appellee.

Cox, Judge.

Plaintiff appeals from a judgment rendered by the Franklin County Court of Common Pleas in favor of defendant on plaintiff's claim for breach of contract. The trial court concluded that defendant provided plaintiff all insurance benefits to which he was entitled under the express terms of plaintiff's individual health insurance policy.

Plaintiff, Jack L. Canady, purchased an individual health insurance policy in 1963 from the predecessor corporation to defendant, Central Benefits Mutual Insurance Company. In May 1987, defendant mailed to plaintiff a notice regarding a change, effective August 1, 1987, in the benefits available to plaintiff under his policy. This notice informed plaintiff that the policy in which he was enrolled at that time would no longer be available and that he would be enrolled in a new policy which had been approved by the Superintendent of Insurance. Defendant mailed two additional notices to plaintiff in July 1987 generally describing the new product, setting forth the premium rates for the two versions of this product available to plaintiff, and providing a telephone number for any questions.

Effective August 1, 1987, plaintiff elected to enroll in the new program which provided basic hospitalization and medical/surgical coverage in addition to major medical benefits. The product plaintiff elected to receive provided $200 per day for inpatient hospital confinement, a fixed schedule of coverage for various medical/surgical procedures, and major medical coverage subject to a $1,000 annual deductible and a lifetime maximum of $500,000. The major medical deductible was subsequently increased to $1,500. Plaintiff did not write or call defendant regarding any questions about the new product and timely paid his premiums for all relevant periods of time.

Plaintiff was admitted on August 20, 1988 to the coronary care unit of Doctors Hospital West and was subsequently transferred on August 22, 1988 to Grant Hospital where he underwent coronary bypass surgery. Plaintiff remained hospitalized for seven days at Grant Hospital. As a result of plaintiff's hospitalization and surgery at the two hospitals, he incurred bills in excess of $34,000. Defendant provided coverage for such bills in the amount of $6,328.94, and denied coverage for the remaining amount. When defendant refused to provide coverage for the outstanding hospital and medical bills incurred by plaintiff, plaintiff filed a complaint with the Ohio Department of Insurance regarding defendant's handling of his claims.

Thereafter, on June 8, 1989, plaintiff initiated this suit for breach of contract. Plaintiff alleged in two counts that defendant's conduct in refusing greater coverage constituted a breach of its contractual obligations and that

such conduct was performed in bad faith giving rise to a claim for punitive damages. Following the completion of all discovery, the matter was submitted on a stipulated set of facts for decision by the trial court. Although not in the record, plaintiff apparently agreed to drop his demand for punitive damages in exchange for defendant's agreement to withdraw a previously filed motion for summary judgment. Following briefing by the parties on plaintiff's complaint for breach of contract, the trial court entered a judgment in favor of defendant on June 22, 1990. The trial court found specifically that the language of the policy issued by defendant to plaintiff was clear and unambiguous regarding the nature and amount of benefits provided under the policy, that the provisions of plaintiff's basic hospital coverage under the policy did not conflict with the provisions of the major medical coverage provided, that the policy clearly and unambiguously limited coverage of plaintiff's hospital expenses to the $200 daily maximum and that defendant had paid all benefits to plaintiff in accordance with the terms of the policy such that plaintiff was not entitled to additional reimbursement for excess medical charges.

Plaintiff now appeals and sets forth the following single assignment of error:

"The trial court erred to the substantial prejudice of the plaintiff-appellant in ruling that he was not entitled to the benefits provided for in the major medical coverage contained in the policy issued by the defendant-appellee."

Although plaintiff raises a variety of arguments under his sole assignment of error, the essence of plaintiff's position is that the trial court erred in concluding that the terms of the major medical coverage provided by the policy was clear and unambiguous. More particularly, plaintiff contends that the major medical provisions of the policy did not clearly and conspicuously indicate that he was not entitled to major medical coverage until the fifty-first day of his hospitalization. It is plaintiff's position that because the major medical provisions did not restrict his major medical coverage during the first fifty days of his hospitalization, he was entitled to such coverage for the eight days he was hospitalized in August 1988. In making this argument, plaintiff relies not only on the language utilized in the policy but also upon the representations made by defendant in its May and July 1987 notices regarding the changes in coverage.

Generally, a policy of insurance constitutes a contract between the insurer and the insured. See *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. The construction of a written contract is a question of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph

one of the syllabus. Like all contracts, an insurance policy is to be given a reasonable construction that accords with the intent of the parties as expressed by the terms of the policy. *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus. If the terms utilized in the policy are susceptible of more than one interpretation, such terms are to be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus. This rule of construction applies not only to the language utilized by the insurer in drafting the policy, but also to the placement of words and punctuation used. *Reeder v. Cetnarowski* (1988), 47 Ohio App.3d 90, 92, 547 N.E.2d 376, 378. Finally, where the contract reasonably provides coverage for a given condition, any exclusions, restrictions, or exceptions to coverage must be clearly and conspicuously set forth in the policy. Cf. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490, and *American Financial Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 174, 44 O.O.2d 147, 148, 239 N.E.2d 33, 35.

Applying these principles to this case requires that we examine the policy language utilized to ascertain the parties' understanding of the terms of the contract when the agreement was entered into. Initially, this court notes that the notices sent to plaintiff by defendant in May and July 1987 regarding the new product did not specify at any time that the major medical benefits were subject to a fifty-day waiting period. The May 1987 notice explained that the major medical coverage would include excess hospital days, but did not specify that this coverage would not be available during the first fifty days of hospitalization. The July 1987 notice provided only that coverage under the major medical portion of the policy would extend to "the provider's reasonable charge, subject to any maximums, deductible or other limitations stated in this policy."

The policy itself also does not expressly restrict major medical benefits for hospital coverage to a fifty-day waiting period. Indeed, the definitions provided in the policy of basic coverage and major medical coverage suggest that major medical benefits will pay " * * * for a portion of the balance remaining after your Basic Coverage has paid its share of the expenses. Major Medical will provide benefits subject to Deductible and lifetime maximum, both of which are described in detail in the section entitled 'How Payment is Determined.' " The policy's basic hospital coverage is described as follows:

"Days of Coverage

"We will pay the Provider's Reasonable Charge or the actual charge, whichever is less, up to the Daily Maximum for In-patient Hospital services.

Your Daily Maximum is shown in the Schedule of Benefits. For most conditions, you are covered for up to 50 days of care during a Continuous Confinement. * * *

" * * *

"NOTE: Excess Hospital days are eligible for payment under your Catastrophic Major Medical Coverage. However, Hospital expenses in excess of the Daily Maximum are not covered under your Catastrophic Major Medical Coverage."

The policy then describes the coverage provided under the catastrophic major medical terms as follows:

"Your Major Medical Coverage provides additional health care coverage for some of the excess Hospital, Facility Other Provider and medical expenses. * * *

"Benefits for Major Medical Covered Services are payable only when the Covered Services are not payable under your Basic Hospital and Medical/Surgical Coverage. Major Medical Coverage is subject to the Deductible as described below."

The policy also provides that there is a $1,500 deductible " * * * after which we will pay 100% of the Provider's Reasonable Charge up to your lifetime maximum benefit of $500,000." On the next page of the policy there is a "Special Note" which describes expenses not covered by major medical. The five expenses listed include as the final exclusion from coverage "[a]ny expenses in excess of Daily Maximum as paid under the Basic Hospital Coverage." Finally, on page thirty of the policy, the expenses covered by the major medical portion of the policy are listed as:

"When you are an Inpatient in a Hospital or Facility Other Provider, Covered Services include:

"Accommodations in a semi-private room containing 2 or more beds, general nursing services, meals and special diets.

"Operating and recovery rooms, intensive care unit and equipment.

"Ancillary expenses. Ancillary expenses are additional services and supplies which are necessary for your care while an Inpatient in a Hospital or Facility Other Provider.

"Inpatient Hospital expenses in excess of the Basic Hospital's Daily Maximum will not be covered under the Major Medical portion of your Policy."

■ Upon review of the policy terms set forth above, this court concludes that the trial court erroneously found that the policy clearly and unambiguously restricted major medical coverage for hospitalization costs incurred

during the first fifty days of inpatient treatment. The fifty-day limitation on coverage is expressly set forth under the terms describing basic coverage for hospitalization. That section limits basic coverage to a period of fifty days, which coverage is subject to the daily maximum of $200. The note to this coverage merely informs the policyholder that hospital days in excess of fifty days are eligible for major medical coverage, but subject to the $200 daily maximum. This section does not either expressly or impliedly restrict major medical benefits during the first fifty-day period. Moreover, the definition of major medical coverage set forth in the policy clearly indicates that such coverage is available after payment has been made under the basic coverage provisions. There is no indication that major medical coverage for hospital expenses is restricted by a fifty-day waiting period.

The description of major medical coverage set forth on page 16 of the policy underscores the definition provided in the policy by suggesting that major medical coverage provides additional coverage for excess hospital expenses. That section explains that benefits under major medical are payable when the service is not paid under basic hospital coverage. The only restriction set forth in that section indicates that major medical coverage is subject to a $1,500 deductible. The very next paragraph describing the deductible and the amount of payment indicates that major medical is designed to share the cost of hospital expenses subject only to the $1,500 deductible after which coverage is provided at one hundred percent of the provider's reasonable charge up to a maximum of $500,000.

The only indication in the entire policy that major medical benefits for hospital expenses are subject to a fifty-day period is contained on page 18 of the policy. The last item on the list of expenses excluded from major medical coverage states that major medical will not provide coverage for expenses in excess of the daily maximum as paid under the basic hospital coverage. Such restriction clearly does not expressly state that major medical coverage for hospital expenses begins only upon the fifty-first day of hospitalization. Rather, to reach this conclusion it is necessary to refer back to the description on page 14 of the policy regarding basic hospital coverage.

We find the restriction on major medical coverage for hospital expenses incurred during the first fifty days of hospitalization is neither clear nor conspicuous. See *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 499, 462 N.E.2d 403, 406, and *Saccucci v. State Farm Mut. Auto. Ins. Co.* (1987), 32 Ohio St.3d 273, 275, 512 N.E.2d 1160, 1161. Such clarity is statutorily required in the case of sickness and accident insurance policies. R.C. 3923.03(E).

Additionally, the fifty-day exception to major medical coverage clearly conflicts with the definition of major medical coverage contained on page four of the policy and the description of such coverage outlined on page 16. More particularly, in describing the deductible and amount of payment, the policy clearly states that after the $1,500 deductible is paid major medical will cover one hundred percent of the provider's reasonable charge up to a maximum of $500,000. If defendant's fifty-day restriction on major medical coverage is given effect, the policy provides major medical benefits for hospital expenses commencing on the fifty-first day of hospitalization and provides identical coverage to that provided under the basic hospitalization coverage.

Although defendant suggests that major medical covers expenses which are different from the expenses covered by the basic coverage, a review of the policy terms describing services covered by basic hospital coverage on page 18 of the policy reveals that this coverage is no different from the coverage under major medical set forth on page 30 of the policy. Thus, under defendant's interpretation of the policy, basic hospital coverage provides plaintiff $200 per day for hospital charges during the first fifty days of hospitalization and major medical then provides $200 a day commencing on the fifty-first day of hospitalization. In short, the policy provides no different coverage under major medical than that offered under basic if given the construction advanced by defendant. Such construction is inconsistent with the description of major medical set forth in both the definition of major medical coverage and the description of that coverage.

Given the conflicting terms utilized in the policy regarding major medical coverage, this court adopts the provision most favorable to the insured. *Boyle v. Great–West Life Assur. Co.* (1985), 27 Ohio App.3d 85, 89, 27 OBR 105, 108, 499 N.E.2d 895, 898. Accordingly, plaintiff was entitled to major medical coverage for excess hospital expenses incurred during the eight days of his hospitalization, such coverage not being restricted by either a fifty-day waiting period or a $200 maximum. The $200 maximum was clearly applicable only to major medical expenses incurred after the fiftieth day of inpatient hospitalization.

Plaintiff's sole assignment of error is sustained, and the judgment of the common pleas court is reversed. This cause is remanded to that court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and WHITESIDE, JJ., concur.

DONALD A. Cox, J., of the Gallia County Court of Common Pleas, sitting by assignment.