WATKINS et al., Appellees,

v.

BROWN et al., Appellees;

CINCINNATI INSURANCE COMPANY, Appellant.

[Cite as *Watkins v. Brown* (1994), 97 Ohio App.3d 160.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 14254.

Decided Sept. 7, 1994.

*David P. Hecht,* for plaintiffs-appellees.

*Ellen Weprin,* for defendants-appellees.

*Brian McNair,* for defendant-appellant.

FREDERICK N. YOUNG, Judge.

Cincinnati Insurance Company ("CIC") appeals from a declaratory judgment finding that the business exclusion provision of the homeowner's insurance policy Thelma Brown had with it did not apply to baby-sitting services conducted in her home. After carefully reviewing the homeowner's policy, we conclude that Brown's baby-sitting of Danielle Watkins was a business as contemplated in the business exclusion provision, and reverse the judgment of the trial court.

The Watkinses are both employed with Dayton City Schools. They approached Brown, a longtime friend of the family, to baby-sit their infant daughter Danielle when they returned to work for the 1991–1992 school year. The parties negotiated a fee of $40 per week to compensate Brown for her time and trouble, and the Watkinses promised to bring all of the food, formula, diapers, toys, and other supplies Danielle would need every day. Brown agreed to this arrangement. She began baby-sitting Danielle in August 1991, according to a regular schedule, usually from 9:00 or 12:00 to about 4:00 p.m. weekdays. Brown's duties involved feeding Danielle two or three times a day, changing her diaper about four times a day, supervising her play, and otherwise responding to her needs. This routine continued from August 1991 through part of February 1992.

Prior to this time, Brown had been employed as an assistant housekeeper in a nursing home. She quit working there when she had her own child, but planned to return as soon as her own son was old enough to go to day care. She testified that she did not consider baby-sitting her career, and was not tempted to make it

her career, but it was something she was willing to do for her friend until she could return to work at the nursing home.

On February 5, 1992, Brown broke Danielle's leg in several places while changing her diaper. The Watkinses sued Brown and CIC, Brown's insurance carrier. CIC brought a cross-claim against Brown, seeking a declaration that her homeowner's policy did not provide coverage for Danielle's injuries. CIC relies upon a business exclusion provision that states that damages arising from activities connected with the insured's business are excluded from the liability coverage otherwise provided in the policy.

After a hearing on the declaratory judgment matter, the court determined that the business exclusion provision of Brown's insurance policy did not apply to her baby-sitting services, finding that Brown "agreed to the baby-sitting arrangement as a favor to her friend and not out of a desire to make a profit. Under these facts, it is difficult to conceive of Mrs. Brown as being in the 'business' of baby-sitting." The court also relied on *Am. Financial Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 174, 44 O.O.2d 147, 148, 239 N.E.2d 33, 35, for the proposition that "[e]xclusion[s] * * * must be clear and exact in order to be given effect." Applying this rule to the business exclusion as it appeared in the contract, the court concluded, "given the absence of any specific policy language excluding child care activities * * * this court finds the business exclusion provision of the policy to be inapplicable."

This appeal followed. In the sole assignment of error, CIC contends:

"The trial court erred to the prejudice of the defendant-appellant, the Cincinnati Insurance Company, by holding that the 'business' exclusion in the homeowner's policy was overly broad and did not apply to the day care service provided by the defendant-appellee, Thelma Brown."

CIC apparently concedes that Brown has met her burden of demonstrating that the general provisions of the policy should provide her coverage for any liability arising from Danielle's injuries, but CIC contends, on appeal, that it has met its burden of showing that the business exclusion provision applies. It does not contest the trial court's findings of fact, but argues that the court erred as a matter of law in holding that the term "business," as used in the policy, was ambiguous and did not clearly embrace Brown's baby-sitting.

The construction of an insurance contract, like that of any other contract, is a matter of law. *Canady v. Cent. Trust Benefits Mut. Ins. Co.* (1991), 71 Ohio App.3d 363, 366, 594 N.E.2d 37, 38–39. Courts are required to interpret the contract in such a way as to give effect to the intention of the parties at the time the agreement was entered into, as evidenced by the provisions of the contract. *Id.* at 367, 594 N.E.2d at 39; *Progressive Specialty Ins. Co. v. Easton*

(1990), 66 Ohio App.3d 177, 583 N.E.2d 1064. Contract terms are to be given their "natural and usual" meaning if they are not defined in the policy, unless it is clear from the policy that the parties intended to use some specialized or technical definition. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 172–173, 24 O.O.3d 274, 278–279, 436 N.E.2d 1347, 1351–1352. When a contract term is defined in the policy, that definition controls what the term means. *Woods v. Nationwide Mut. Ins. Co.* (1978), 295 N.C. 500, 505, 246 S.E.2d 773, 777; *Filip v. N. River Ins. Co.* (1990), 201 Ill.App.3d 351, 352, 147 Ill.Dec. 17, 18, 559 N.E.2d 17, 18.

Because it is the insurance carrier that typically drafts the policy, where policy language is ambiguous, that language is to be construed in the way that is most favorable to the insured. *Am. Financial Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d at 173, 44 O.O.2d at 148, 239 N.E.2d at 35. This general principle applies with even greater force to language that purports to limit or to qualify coverage. *Id.; Cincinnati Ins. Co. v. Mosely* (1974), 41 Ohio App.2d 113, 116, 70 O.O.2d 127, 128, 322 N.E.2d 693, 696; *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.* (1974), 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39. If an exclusionary clause will reasonably admit of an interpretation that would preserve coverage for the insured, then as a matter of law, a court is bound to adopt the construction that favors coverage. *Lester v. State Farm Mut. Auto. Ins. Co.* (1989), 64 Ohio App.3d 52, 54, 580 N.E.2d 793, 795. See *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383; *Bates v. John Hancock Mut. Life Ins. Co.* (1978), 6 Mass.App.Ct. 823, 824, 370 N.E.2d 1386, 1387–1388; *Gulf Ins. Co. v. Parker Products, Inc.* (Tex.1973), 498 S.W.2d 676, 679. However, if an exclusionary clause has only one reasonable interpretation, a court is bound to enforce the provision accordingly. See *Progressive Specialty Ins. Co. v. Easton*, 66 Ohio App.3d at 180, 583 N.E.2d at 1066–1067.

Brown's homeowner's policy provides liability coverage for "the damages [arising from bodily injury, personal injury, or property damage] for which the insured is legally liable." Excluded from this coverage are damages "arising out of any activities of any insured in connection with a business owned or controlled by any insured." This language unambiguously excludes from coverage any liability arising from activities Brown engaged in that were connected with Brown's own business. The central issue in this case is whether "business," as defined in the policy, adequately describes Brown's baby-sitting activities.

"Business" is described in the definitions section of the policy thus: "business includes but is not limited to any trade, profession, or occupation of any kind, including farming * * *. Newspaper delivery, baby-sitting, caddying, lawn care, and similar incidental business activities by a minor resident of your household are not considered business."

Because "business" is defined in the policy, and there is nothing in the policy to indicate that the parties intended to use any other definition, we will restrict our examination to the definition given in the policy. Unfortunately, the policy does not provide a convenient general definition, but merely indicates that "business" embraces some unknown quantity plus "trade, profession, or occupation of any kind." Applying the principles of strict construction, we conclude that Brown's baby-sitting services must at least qualify as a "trade, profession, or occupation of any kind" in order to qualify as a "business."

The language in the latter part of the definition does not disqualify baby-sitting as a possible business for purposes of the exclusion clause. It is true that the phrase "baby-sitting * * * and similar incidental business activities by a minor resident of your household are not considered business," standing alone, could be construed to mean that baby-sitting is not business because it is an "incidental business activity" or that it is not business so long as it is performed by minor resident of the insured's household. However, we must read this language in a way that is harmonious with the language in the rest of the provision. We take "trade, profession, or occupation *of any kind*" to signify that baby-sitting may be a kind of trade or occupation for which the policy was not meant to provide liability coverage.

■ It remains for us to examine whether Brown's baby-sitting was a trade, profession, or occupation. We conclude that it was. "Trade," "profession," and "occupation" are not defined in the policy, so we will refer to Webster's Third New International Dictionary to discover their natural and usual meanings. Webster's defines a *trade* as "the business one practices or the work in which one engages regularly; one's calling; gainful employment; means of livelihood." The same dictionary states that employment is "gainful" if it is "productive of gain; profitable, remunerative; providing an income."

■ Brown and the Watkinses negotiated a fee for Brown's baby-sitting services to compensate her for her time and trouble. This amount, $40, was paid in cash each Friday, and was not used to purchase food or diapers or any other supplies for Danielle. The fact that Brown did not realize an enormous profit from this arrangement is not dispositive, nor is the fact that she probably would not have agreed to baby-sit if someone other than her good friend had asked her to do it. The definition of "trade" does not require that the tradesperson be motivated entirely by profit, and the $40 she realized each week was pure profit—gain produced by her labor. Moreover, her labor was regular—each weekday from 9:00 to 4:00 or from 12:00 to 4:00—though it lasted for only about six months. See *Farmers Ins. Co. of Arizona v. Wiechnick* (1990), 166 Ariz. 266, 268, 801 P.2d 501, 503 ("an occupation may be continuous and regular even though it is temporary"). Brown's baby-sitting of Danielle Watkins was work she

engaged in regularly, and which produced an income for her. It was therefore a business as contemplated in the homeowner's policy.

Furthermore, since baby-sitting is not excluded from coverage if done "by a minor resident" of the household, it certainly can be construed as excluded from coverage if done by an *adult* resident of the household by the maxim "expressio unius est exclusio alterius." Freely translated, the phrase means the express mention of one thing implies the exclusion of another. *Saslaw v. Weiss* (1938), 133 Ohio St. 496, 498, 11 O.O. 185, 186–187, 14 N.E.2d 930, 932.

Having found that the business exclusion provision applies, we must yet examine whether the exception to that exclusion, for "activities which are usual to non-business pursuits," takes the diapering out of the exclusion. We are persuaded by the appellant's argument that it does not. We agree with CIC that although most people are not paid to diaper children, when they baby-sit infants for compensation, and those infants must be diapered, then the diapering is an activity arising from their business. Brown was expected to change Danielle's diaper as part of the care she provided her. Compensation for this service was reflected in the weekly fee she received from the Watkinses. Therefore, Brown's diapering activities were not "usual to non-business pursuits," and that exception to the business exclusion clause does not resurrect coverage for any liability arising from Danielle's injuries.

The business exclusion clause, though it does not expressly list baby-sitting as a business, can only be reasonably construed to exclude liability coverage for injuries arising from Brown's baby-sitting when she engaged in that baby-sitting regularly and earned an income by it, irrespective of her primary motive for engaging in it. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

BROGAN and WOLFF, JJ., concur.