OPINION
{¶ 1} Plaintiffs-appellants, Joseph and Julie Marasco, appeal from the October 1, 2003 judgment of the Franklin County Court of Common Pleas granting the separate motions for summary judgment of defendants-appellees, Progressive Preferred Insurance Company ("Progressive"), Jeff Lewis ("Lewis") and Putnam, White Lewis Insurance Agency ("Putnam White"). For the following reasons, we affirm.
 {¶ 2} This case arises out of a motorcycle accident that occurred on May 19, 2002. That evening, appellant Joseph Marasco ("Mr. Marasco") was operating a 2001 Suzuki motorcycle he had purchased for his business, Maximum Street Performance. Mr. Marasco was traveling to "Black Heritage Week" in downtown Columbus, Ohio, to promote Maximum Street Performance. (Mr. Marasco Depo. at 38.) As he traveled on Sullivant Avenue, an unidentified driver operating a vehicle owned by Harry Hopewell ("Hopewell") struck Mr. Marasco. Mr. Marasco suffered serious injuries as a result of the accident, including a below the knee amputation.
 {¶ 3} By way of background, Mr. Marasco and his wife, Julie Marasco ("Mrs. Marasco"), are the owners and operators of Maximum Street Performance, a sole proprietorship located at 485 Ternstedt Lane in Columbus, Ohio. Maximum Street Performance is in the business of purchasing, repairing and selling motorcycles. During its time in operation, Maximum Street Performance was insured through various insurance policies issued over the years by Auto-Owners Mutual Insurance Company ("Auto-Owners").
 {¶ 4} Mrs. Marasco was in charge of procuring insurance for Maximum Street Performance, having had prior experience within the health, life and disability insurance industry for over 14 years. Starting as a receptionist, she eventually became an account consultant for Unum Provident Insurance, where she did contracting and follow-up services for large case policies. Mrs. Marasco has also taken a number of continuing education insurance classes.
 {¶ 5} Sometime in 1998, Mrs. Marasco contacted Lewis, who was employed by Putnam White, to obtain insurance coverage for the business. In her deposition, she testified that she conveyed to Lewis that she wanted the new policy to "mirror" the Auto-Owners policy she had purchased through her prior insurance agent, Jane Danduran ("Danduran"). (Mrs. Marasco Depo. at 28.)
 {¶ 6} Mrs. Marasco testified that prior to the accident, she was unaware her policy with Danduran had uninsured/underinsured ("UIM") coverage, and that she never specifically requested UIM coverage from Danduran. Mrs. Marasco asserted, "it was up to Jane, being the insurance agent, to provide me with the coverage that I need to cover every angle that I wanted covered." Id. at 35. Mrs. Marasco became aware that the Danduran policy contained UIM coverage when she read the policy after the accident. Id.
 {¶ 7} Mrs. Marasco asserted that she was more detailed about the coverage she was seeking with Lewis than she was with Danduran because "she was a little bit more seasoned and knew what we needed after working in the insurance industry a little longer." Id. at 34. Mrs. Marasco averred that she believed the policy obtained by Lewis provided coverage for bodily injury for motorcycle accidents. While she did not specifically state to Lewis that she wanted coverage for personal injury accidents, she explained to Lewis the coverage appellants were seeking:
I would say to him that I want to make sure that if Joe gets on a motorcycle, whether he's test-riding or we own the motorcycle, and he crashes or something happens to him, that he is covered; and I want to make sure that if somebody leaves the shop on a motorcycle that Joe fixed, worked on, whatever, and that person crashes due to Joe's neglect, that that person would be covered, their motorcycle would be covered; if somebody were to break in our shop, that if anything was stolen, the shop was set on fire — because every one of our machines are all paid for, there's no leases on any of this, on any of the equipment so it's all owned — that anything be replaced; anything in our care, custody and control of a — of a customer's, that it would be replaced.
Id. at 40-41.
 {¶ 8} In support of her memorandum contra, Mrs. Marasco submitted an affidavit stating that she gave Lewis a declarations page from an Auto-Owners garage liability policy procured by Danduran for him to mirror. This policy, effective February 26, 1996 through February 26, 1997, indicated that appellants' Auto-Owners policy procured by Danduran provided UIM coverage. Conversely, Lewis claims that Mrs. Marasco only gave him a Grange policy for commercial general liability coverage and property coverage with no UIM coverage for him to mirror. In support of his position, Lewis submitted a Grange policy, which was marked as having been faxed from Maximum Street Performance to "Jeff" on June 13, 1999. Further, Lewis and Putnam White submitted an affidavit from Danduran, who stated that appellants' previous garage liability policy that she procured through Auto-Owners prior to 1997 contained no UIM coverage.
 {¶ 9} Prior to procuring insurance coverage for appellants, Lewis met with Mr. Marasco to familiarize himself with the business and provide a quote. Thereafter, Lewis procured an Auto-Owners insurance policy for appellants. Mrs. Marasco testified that she did not have regular communication with Lewis after the initial meeting to sign their insurance application: "I would get a — you know, a — he would send me a letter in the mail around renewal time saying, you know, here's an updated policy, and I'd — like I said, Joe would bring it home and I'd put it in the drawer." Id. at 38.
 {¶ 10} The declarations page of the policy Lewis procured for appellants stated that it contained commercial general liability ("CGL") coverage, garage liability coverage and commercial property coverage. When she received the Auto-Owners policies from Lewis, Mrs. Marasco testified that she glanced over the declarations page, noted the policy dates and placed them in a drawer. Mr. Marasco testified that he read the Auto-Owners policy when they first got it, yet all contacts with Lewis regarding the policy and its renewal were handled through Mrs. Marasco. Mrs. Marasco never read the Auto-Owners policies obtained by Lewis, nor did she compare it with the policy procured by Danduran. She reasoned, "I did not sit down and read [the insurance policy] from front to back because that's an insurance agent's job to do: To make sure that they have provided adequate coverage for you." Id. at 42.
 {¶ 11} In March 2002, appellants received a letter from Auto-Owners indicating that their insurance would be terminated in April 2002. Thereafter, Mrs. Marasco called Auto-Owners, and was informed by a representative that Lewis was on vacation. The representative indicated to Mrs. Marasco that she believed appellants' policy anniversary date was April 14. The representative assured Mrs. Marasco that Lewis would have time to return from his vacation and discuss the issues surrounding the renewal of appellants' Auto-Owners policy.
 {¶ 12} Mrs. Marasco contacted Lewis sometime before April 14, 2002. Lewis stated that Auto-Owners intended to discontinue their coverage because appellants were operating a salvage business behind Maximum Street Performance. Mrs. Marasco explained to Lewis that the salvage business is under a different license and "it's not up in the front where we do all the sales and service that — that Auto-Owners is insuring." Id. at 25. Mrs. Marasco testified that Lewis responded, "Well, I'll call and explain that to them and everything should be okay. Don't worry about it." Id. Later in her deposition, Mrs. Marasco stated that Lewis "told [her] that everything would be all right. He would call Auto-Owners, and if there was a problem, he would give me a call back and let me know; and, you know, that never — never heard anything, no letter, no nothing, until my call to him." Id. at 77. Based on that conversation, Mrs. Marasco assumed "that [Lewis] was going to call Auto-Owners [to resolve this issue] and he would take care of it, and [that] if there was any problem, he'd call [her]." Id. at 71, 77.
 {¶ 13} Mrs. Marasco testified that she did not pay a premium on appellants' insurance policy with Auto-Owners after April 14, 2002 because "with insurance companies, it takes quite awhile [sic] to get things regenerated as far as billings and new policies and everything regenerated back out, and by the time the accident happened on May 19, it was such a short time span that I was looking for it to come in the mail at any time." Id. at 26.
 {¶ 14} After Mr. Marasco's accident, on June 13, 2002, appellants' attorney requested a copy of the Auto-Owners policy. Prior to June 13, appellants had not notified anyone from Auto-Owners of Mr. Marasco's accident. Id. at 72. Mrs. Marasco averred that it was not until her attorney's request for the current policy that she realized that she had not received the updated policy for Maximum Street Performance. Mrs. Marasco contacted Lewis to ask about the insurance coverage, who informed her that they did not have insurance coverage for the business at the time of the accident. Lewis averred that he did not have a chance to rewrite the policy because Auto-Owners was not willing to renew their coverage. Further, Lewis stated to Mrs. Marasco, "it had fell through the cracks in his office" and admitted, "it's my fault." Id. at 27.
 {¶ 15} At the time of the accident, appellants had a personal automobile liability policy with Progressive. The declarations page of the Progressive policy specifically listed a 1999 Chevrolet K1500 and 1969 Chevrolet Camaro as vehicles insured under the policy.
 {¶ 16} On September 30, 2002, appellants filed a complaint in the Franklin County Court of Common Pleas against Progressive, seeking UIM coverage and medical payments coverage. In their complaint, appellants also alleged a cause of action against Auto-Owners for UIM coverage and medical payments benefits under their CGL policy, and against State Farm Fire Casualty Insurance Company ("State Farm") for UIM coverage under their homeowners' policy. Appellants also asserted a claim against Hopewell for negligent entrustment of his vehicle.
 {¶ 17} Appellants also asserted a claim in their complaint for fraudulent and/or negligent misrepresentation against Lewis and Putnam Life and Health Agency, Inc. for allegedly failing to renew or procure insurance in April 2002 for Maximum Street Performance. Appellants alleged that Lewis negligently and/or fraudulently failed to disclose the absence of a UIM provision in their insurance policy, and that Putnam Life and Health Agency, Inc. was liable for his negligence under the doctrine of respondeat superior. Finally, appellants asserted a claim for their children's loss of filial consortium and Mrs. Marasco's loss of her husband's consortium. On January 30, 2003, appellants filed an amended complaint solely to correct the party Putnam Life and Health Agency, Inc. to be Putnam White, Lewis's employer.[1]
 {¶ 18} Auto-Owners filed its motion for summary judgment on May 2, 2003, asserting that appellants were not entitled to UIM benefits under the CGL and garage liability coverage issued for the policy period of April 14, 2001 through April 14, 2002. On June 5, 2003, the trial court held that Auto-Owners did not provide, nor were they statutorily required to offer, UIM coverage as a matter of law. On July 3, 2003, Auto-Owners filed an additional motion for summary judgment asserting that appellants were not entitled to coverage under a tailored CGL policy issued January 9, 2002 through January 9, 2003, in which Marasco was the named insured.[2] On September 4, 2003, the trial court held that Auto-Owners was not statutorily obligated to offer UIM benefits. Appellants did not appeal the trial court's findings.
 {¶ 19} On July 3, 2003, Progressive filed its motion for summary judgment, arguing that appellants were not entitled to any coverage for damages arising from Mr. Marasco's accident. By decision filed October 1, 2003, the court sustained Progressive's motion for summary judgment. First, the court found that Mr. Marasco was not entitled to coverage under the medical payments coverage section of the policy because he was driving a motorcycle, which was not encompassed in the policy's definition of a vehicle. Further, the court found that appellants were not entitled to UIM coverage because the UIM exclusion contained in Progressive's policy excluded Mr. Marasco's accident from such coverage.
 {¶ 20} On July 7, 2003, Lewis and Putnam White filed their motion for summary judgment, seeking dismissal of all claims against them, which motion was sustained by the trial court on October 1, 2003. In reaching its decision, the trial court first reviewed appellants' memorandum contra to Lewis and Putnam White's motion for summary judgment, noting that they had "abandoned any claim based upon Lewis' failure to secure a renewal policy that lapsed on April 14, 2002" and that "appellants are now arguing that Lewis was negligent in failing to obtain the same type of coverage they previously had under the Auto-Owners policy procured by Danduran and further in failing to advise them that they did not have UIM coverage." (October 1, 2003 Decision at 8.) The court reasoned that appellants changed their argument because even if the requested renewal policy had been in place, it would not have provided any UIM coverage.
 {¶ 21} The court further examined appellants' claim for negligent and/or fraudulent misrepresentation, finding that "after thoroughly reviewing their Complaint and Memorandum Contra, the Court could not discern whether [appellants] are intending to assert claims for not only the alleged misrepresentations, but also for negligence, breach of contract, or breach of fiduciary duty." Id. at 9. Nonetheless, the court found that no matter what causes of action are being alleged, Lewis is entitled to judgment as a matter of law.
 {¶ 22} Following its review of appellants' claim for negligent and/or fraudulent misrepresentation, the court found that appellants' claim for negligent misrepresentation fails as a matter of law. In so finding, the court reasoned that a claim for negligent misrepresentation cannot be based upon an omission, and that there must be an affirmative false statement. Here, the court determined that no evidence existed that Lewis affirmatively represented that appellants had UIM coverage under the Auto-Owners policy. In support, the court noted that appellants' tort claim is based on the allegation that Lewis omitted to tell them that they did not have such coverage.
 {¶ 23} Finally, the court found that appellants could not meet their burden in establishing the justifiable reliance element of their fraudulent misrepresentation claim. In reaching this finding, the court found that a review of the Auto-Owner policy's declarations page procured by Lewis shows that no UIM coverage is provided. The court found that Mrs. Marasco, who had years of experience in the insurance industry, failed to read the declarations page of the policy to determine the type of coverage provided. The court reasoned that, since appellants had been issued the same policy over a four-year period prior to its lapse, had they read the declarations page during that time, they would have known that there was no UIM coverage under the policy. Consequently, the court found appellants could not establish the element of justifiable reliance. In conclusion, the court determined this failure to read the policy was fatal to any other claims that appellants may be asserting against Lewis.
 {¶ 24} Additionally, the court indicated that appellants were not attempting to hold Lewis liable for his neglect to procure UIM coverage in the initial policy he obtained through Auto-Owners. Instead, the court determined that appellants were trying to "`carry over' his neglect through several subsequent renewals of that policy." Id. at 12.
 {¶ 25} On appeal, appellants raise the following assignments of error:
I. The trial court erred, as a matter of law, by concluding plaintiff-appellant [SIC] was not entitled to uninsured/underinsured motorist and medical payments coverage pursuant to the policy purchased from progressive preferred Insurance Company.
II. The trial court erred, as a matter of law, by making a factual determination in a motion for summary judgment and concluding that plaintiff-appellant's [SIC] reliance upon defendant-appellee, Jeff Lewis, cannot be Justifiably relied upon.
III. The trial court erred, as a matter of law, by concluding that a negligent misrepresenta-tion cause of action may not arise from the facts of the case.
 {¶ 26} Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.
 {¶ 27} We review the trial court's grant of summary judgment de novo. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,654 N.E.2d 1327. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Coventry,
supra, at 41-42.
 {¶ 28} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on the essential element(s) of the nonmoving party's claims. Dresher,
supra, at 292:
The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Id. at 293.
 {¶ 29} Appellants' first assignment of error rests on the interpretation of the UIM provision included in Progressive's insurance policy. Appellants argue that Mr. Marasco meets all of the requirements entitling him to coverage under the provision. Further, appellants contend that the UIM exclusion relied upon by Progressive is inapplicable. Particularly, appellants assert that the motorcycle Mr. Marasco was driving does not fall under the policy's definition of a "vehicle" as used in the exclusion. Appellants contest that contrary to the trial court's holding, the policy is silent as to whether the general definitions would also apply to the same terms if they are not in boldface type. Appellants assert that at best, the UIM exclusion in the Progressive policy creates an ambiguity as to whether the usual and ordinary meaning should be applied to the term "vehicle" when it is not in boldface type in the policy.[3]
 {¶ 30} In order to determine whether or not appellants are entitled to the coverage they seek, we must review the pertinent definitions found in the Progressive policy. The following definitions are located in the General Definitions section therefrom:
Except as otherwise defined in this policy, terms appearing in boldface will have the following meaning:
4. "Covered vehicle" means:
a. any vehicle shown on the Declarations Page;
b. any additional vehicle on the date you become theowner if:
i. you acquire the vehicle during the policy period shown on the Declarations Page;
ii. we insure all vehicles owned by you; and
iii. no other insurance policy provides coverage for thatvehicle.
For a vehicle you acquire in addition to any vehicle shown on the Declarations Page, we will provide the broadest coverage we provide for any vehicle shown on theDeclarations Page. We will provide coverage for a period of thirty (30) days after you become the owner. We will not provide coverage after this thirty (30) day period, unless within this period you ask us to insure the additional vehicle;
* * *
 {¶ 31} The UIM provision provides benefits because of bodily injury:
1. sustained by the insured person;
2. caused by accident; and
3. arising out of the ownership, maintenance, or use of anuninsured motor vehicle or underinsured motor vehicle.
An "insured person" is defined under the UIM provision of Progressive's policy as:
a. you or a relative; and
b. any person occupying a covered vehicle.
 {¶ 32} The policy excludes UIM coverage for injury sustained by any person "while operating or occupying a motor vehicleowned by, furnished to or available for the regular use of,you, or a relative, other than a covered vehicle."
 {¶ 33} Progressive argues contra that the language in the Progressive policy is unambiguous. Progressive maintains that the policy explicitly provides clear definitions of the terms used in the policy, as well as guidance as to when those terms are to be utilized. Further, Progressive asserts that the UIM exclusion precludes coverage for Mr. Marasco because at the time of the accident, Mr. Marasco was operating a motorcycle. Progressive argues that appellants' policy never provided motorcycle coverage, and that the 2001 Suzuki is not a "covered vehicle" as defined by the policy. Further, Progressive asserts that the definition of the word "motor vehicle" in the exclusion does encompass a motorcycle. Since the term "motor vehicle" is not in boldface type, Progressive urges the court to apply the usual and ordinary of the term, which includes motorcycle. Based on the foregoing, Progressive argues that Mr. Marasco is excluded from coverage for the accident. We agree.
 {¶ 34} It is well-settled that words used in a contract of insurance are to be given their natural and usual meaning unless otherwise defined in the contract. Garlick v. McFarland (1953),159 Ohio St. 539, 545, 50 O.O. 45, 113 N.E.2d 92. Moreover, "`contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" Covington v. Lucia, 151 Ohio App.3d 409,2003-Ohio-346, 784 N.E.2d 186, at ¶ 18, appeal denied,99 Ohio St.3d 1435, 2003-Ohio-2902, 789 N.E.2d 1117, citing Potti v.Duramed Pharmaceuticals, Inc. (C.A.6, 1991), 938 F.2d 641, 647. Courts may not stretch or restrict unambiguous policy provisions to reach a result clearly not sought by the parties. Where the policy is clear within its four corners, courts cannot alter the provisions of the policy. Progressive Specialty Ins. Co. v.Easton (1990), 66 Ohio App.3d 177, 180, 583 N.E.2d 1064. However, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.
 {¶ 35} Based on the four corners of the Progressive policy, we find that the policy's provisions are unambiguous. The policy excludes coverage for a "motor vehicle" owned by, furnished to or available for the regular use of appellants, other than a "covered vehicle." It is undisputed that appellants owned the motorcycle that Mr. Marasco was operating at the time of the accident. Since the term "motor vehicle" is not in boldface type, we apply the natural and usual meaning. "Motor vehicle" has a normal meaning in common usage, which includes motorcycle.Jirousek v. Prudential Ins. Co. (1971), 27 Ohio St.2d 62, 64, 56 O.O.2d 34, 271 N.E.2d 866.
 {¶ 36} Further, we do not find that appellants' motorcycle qualifies as a "covered vehicle" under the Progressive policy. The definition of a "covered vehicle" requires that appellants' motorcycle fall under the definition of a "vehicle." Since the word "vehicle" is in boldface type in the definition of a "covered vehicle," we apply the policy definition. Appellants concede, and we agree, that a motorcycle does not qualify under Progressive's definition of a "vehicle." Therefore, we find that the UIM exclusion precludes UIM coverage under the Progressive policy for Mr. Marasco's accident.
 {¶ 37} Appellants rely on Garlick, supra, and Watkins v.Brown (1994), 97 Ohio App.3d 160, 164, 646 N.E.2d 485, to support their contention that when a contractual term is defined in the policy, that definition controls the meaning of that term and must be applied consistently throughout the policy. However, the general definitions section of the policy explicitly and unambiguously states that except as otherwise defined in this policy, terms appearing in boldface will have the meanings as stated in that provision. Therefore, the plain language of the Progressive policy limits the application of these definitions only to terms in boldface type. Otherwise, the natural and ordinary meanings of the policy terms apply. Garlick.
Furthermore, in Watkins, the Second District Court of Appeals restricted its examination of the meaning of the word "business" to the policy definition since, unlike the present case, there was nothing in the policy to indicate that the parties intended to use any other definition. Id. at 165. As such, appellants' reliance on Garlick and Watkins is misplaced.
 {¶ 38} In their second argument under their first assignment of error, appellants contend that Mr. Marasco meets the requirements entitling him to coverage under the medical payments coverage provision of the Progressive policy. The medical payments coverage portion of the policy provides that Progressive "will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because ofbodily injury":
1. sustained by an insured person;
2. caused by accident; and
3. arising out of the ownership, maintenance or use of a motor vehicle.
An "insured person" is defined under the medical payments coverage portion of the policy as:
a. you while occupying any vehicle, other than a vehicleowned by you which is not a covered vehicle;
b. a relative while occupying a covered vehicle ornon-owned vehicle;
c. you or any relative when struck by a motor vehicle or trailer while not occupying a motor vehicle; and
d. any other person while occupying a covered vehicle.
 {¶ 39} Appellants assert that Mr. Marasco qualifies as an "insured person" under letter "c" of the "insured person" definition, as Mr. Marasco was the named insured on the declarations page and therefore fits the definition of "you." Further, appellants maintain their argument that Mr. Marasco was not occupying a "motor vehicle" as defined by the policy when the accident occurred.
 {¶ 40} Progressive argues that appellants' motorcycle is neither a "vehicle" nor a "covered vehicle" for purposes of the medical payment exclusion as defined in the policy. In support, Progressive notes that the term "vehicle" is in bold face type in the medical payments exclusion. Based on our previous finding that appellants' motorcycle does not qualify as a "vehicle" or "covered vehicle" under the policy definitions, we agree.
 {¶ 41} Further, Progressive asserts that Mr. Marasco does not qualify as an "insured person" as defined in the medical payments provision of the Progressive policy. We agree, and find appellants' argument that Mr. Marasco qualifies under letter "c" of the definition of an "insured person" is unavailing. This definition prohibits Mr. Marasco from occupying a motor vehicle at the time of the accident. The phrase "motor vehicle" is not in boldface type; as such, we apply the natural and usual meaning of the policy term, which includes motorcycle. Garlick;Jirousek. Accordingly, Mr. Marasco is not an "insured person" under the medical payments coverage portion in the Progressive policy.
 {¶ 42} For all of the foregoing reasons, appellants' first assignment of error is overruled.
 {¶ 43} In their second assignment of error, appellants contend that the trial court improperly concluded that appellants' reliance upon Lewis was not justified. Appellants claim that they told Lewis that they wanted the same or better insurance coverage than they had through Danduran. Thereafter, appellants attest that they provided Lewis a copy of their prior policy with a UIM coverage endorsement to Lewis and asked that their new policy mirror it. Appellants aver that they indicated to Lewis that they wanted insurance to cover every aspect of their business. Nevertheless, appellants maintain that Lewis provided a garage keeper's liability policy without UIM coverage, and that he never informed appellants that UIM coverage was not included in the policy. Appellants assert that they were justified in relying on Lewis to "mirror" the Auto-Owners policy they had with Danduran.[4]
 {¶ 44} On appeal, Lewis and Putnam White argue that appellants' claim for fraud fails as a matter of law.[5]
Specifically, Lewis and Putnam White contend that appellants have failed to plead fraud with particularity or allege any relevant facts to prove a claim of fraud.
 {¶ 45} The claim, entitled "negligent and/or fraudulent misrepresentation including respondeat superior," reads in pertinent part:
(44) At all times pertinent hereto, Defendant Jeff Lewis was the insurance agent for Plaintiffs Joe Marasco and Julie Marasco in their capacity as owners of their business, Maximum Street Performance. The Plaintiffs and Defendant Lewis had a longstanding relationship wherein the Plaintiffs relied upon Defendant Lewis' expertise to procure full and complete insurance coverage on their business, Maximum Street Performance. In his fiduciary capacity, Defendant Jeff Lewis was aware of the nature of the business that encompassed Maximum Street Performance; to wit: that it was intended for the purchase, repair, and resale of motorcycles and motorcycle parts. Over a period of several years, Defendant Jeff Lewis routinely accepted money from Plaintiffs Joe and Julie Marasco in return for Defendant Lewis to advise as to appropriate insurance coverage and to procure insurance to cover all aspects of their motorcycle business.
(45) On or about the first day of April [sic], Plaintiff [Mrs.] Marasco and Defendant Lewis had a telephone conversation wherein Defendant Lewis assured Plaintiff [Mrs.] Marasco that full insurance coverage had been or was to be purchased immediately on behalf of the Plaintiffs DBA Maximum Street Performance. After the automobile collision of May 19, 2002, it was discovered that Defendant Lewis, with reckless disregard for the content of his statements, failed to procure the promised insurance coverage. Plaintiffs justifiably relied upon the statements made by Defendant Lewis and have suffered catastrophic financial loss as a result.
(46) Defendant Jeff Lewis had a duty to ensure that the Plaintiffs' [sic] and their business was insured at all times, Defendant Lewis breached that duty by failing to notify the Plaintiffs of an alleged lapse in their coverage despite assurances that coverage was in full force and effect, and the Plaintiffs have suffered serious economic loss as a result of Defendant Lewis' negligence.
(47) Defendant Lewis's [sic] actions constitute both fraudulent misrepresentation and negligent misrepresentation. Defendant Lewis is otherwise liable in other respects.
(Appellants' Amended Compl. at 10, 11.)
 {¶ 46} In Reasoner v. State Farm Mut. Auto. Ins. Co. (Mar. 5, 2002), Franklin App. No. 01AP-490, 2002 Ohio App. LEXIS 905, we considered whether or not the appellant pled his claim for fraud with the requisite particularity, and met his burden under Civ.R. 56, demonstrating that a genuine issue of material fact exists for trial. Here, we need not determine whether appellants pled fraud with particularity, as even if they did, they failed to set forth evidence creating a genuine issue of material fact in support of their allegations.
 {¶ 47} Construing the evidence most strongly in appellants' favor, we find that Lewis and Putnam White discharged their initial burden of informing the trial court of the basis of their motion for summary judgment, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of appellants' claim. Dresher, supra, at 292. In their motion for summary judgment, Lewis and Putnam White identified portions of appellants' amended complaint, asserting that there are no facts in support of the contention that Lewis knowingly made a false statement with the intent of misleading appellants. They note that appellants only alleged that Lewis made statements that he would obtain insurance coverage for their business and failed to do so. Consequently, Lewis and Putnam White argued that appellants could not prove justifiable reliance or proximate cause, which are elements necessary for appellants' fraud claim.
 {¶ 48} Lewis and Putnam White also submitted the following evidence pursuant to Civ.R. 56(C): (1) a certified copy the Auto-Owners policy in effect from April 14, 2001 until April 14, 2002; (2) appellants' request for admissions propounded upon Lewis and Putnam White; (3) Lewis' affidavit, stating that he was provided with a Grange Mutual Casualty Company insurance policy from Mrs. Marasco with no UIM coverage prior to obtaining coverage with Auto-Owners; and (4) Danduran's affidavit, stating that the Auto-Owners policy she helped procure for appellants did not have UIM coverage. Based on the foregoing, we conclude that Lewis and Putnam White satisfied their initial burden under Civ.R. 56.
 {¶ 49} Thereafter, the burden shifted to appellants to "set forth specific facts to show that there is a genuine issue for trial for appellants' fraud claim." Id. at *23; Civ.R. 56(E). In order to sustain a cause of action for fraudulent misrepresentation, appellants must prove: (a) a representation, or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation, and (f) a resulting injury proximately caused by the reliance. Applegate v. Northwest Title Company, Franklin App. No. 03AP-855, 2004-Ohio-1465, at ¶ 13; Brewer v. Brothers
(1992), 82 Ohio App.3d 148, 153, 611 N.E.2d 492; Brothers v.Morrone-O'Keefe Dev. Co., LLC, Franklin App. No. 03AP-119, 2003-Ohio-7036; Taris v. Brown (Feb. 20, 1996), Franklin App. No. 95APE08-1075, 1996 Ohio App. LEXIS 545. Failure to prove any one of these elements is fatal to a plaintiff's case. Reasoner,
supra, at *22.
 {¶ 50} Under Reasoner, supra, appellants satisfy their Civ.R. 56 burden if they present evidence, not mere allegations, that Lewis and Putnam White are not entitled to summary judgment. Accordingly, appellants cause of action for fraudulent misrepresentation could survive summary judgment by evidence that Lewis made representations to them that he would procure the renewal of the Auto-Owners policy in April 2002, and that, at the time the representations were made, Lewis did not intend to do so. Appellants must also set forth evidence regarding materiality to the transaction, intent to mislead, justifiable reliance, and damages. "Where the pleadings and evidence submitted clearly fail to support a claim for fraud, summary judgment is a proper form of relief in favor of the party against whom the claim is asserted." Reasoner, supra, at *22.
 {¶ 51} Upon review, we find that appellants have not satisfied their reciprocal burden as the nonmoving party to identify evidence to demonstrate that any genuine issue of material fact must be preserved for trial for appellants' fraudulent misrepresentation claim. The record is devoid of any facts to support that Lewis ever had any intention to make false representations regarding the renewal of appellants' insurance policy in April 2002, or make any representations with such utter disregard as to the truth of the representations that knowledge may be inferred. Therefore, we find that appellants' claim for fraudulent misrepresentation fails as a matter of law. Accordingly, appellants' second assignment of error is overruled.
 {¶ 52} In their third assignment of error, appellants argue that the trial court erred by concluding that a cause of action for negligent misrepresentation may not arise from the facts of this case. The elements of negligent misrepresentation are as follows: "`One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance
upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" (Emphasis sic.) Delman v. Cleveland Heights (1989),41 Ohio St.3d 1, 9, 534 N.E.2d 835. (Citations omitted).
 {¶ 53} Unlike fraudulent misrepresentation, which requires intent to deceive, negligent misrepresentation only requires good faith coupled with negligence. 4 Restatement of the Law 2d, Torts (1977), Section 552, Comment a. Liability for negligent misrepresentation is based upon the negligence of the actor in failing to exercise reasonable care or competence in supplying correct information. Id. "`A representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession.'" Martin v. Ohio State Univ.Found., (2000), 139 Ohio App.3d 89, 104, 742 N.E.2d 1198, citingMerrill v. William E. Ward Ins. (1993), 87 Ohio App.3d 583,590, 622 N.E.2d 743, quoting Prosser Keeton, Law of Torts (5 Ed. 1984), 745, Section 107. The question of whether or not the actor used reasonable care in obtaining or communicating information is one for the jury, unless the facts are so clear as to permit only one conclusion. 4 Restatement of the Law 2d, Torts (1977), Section 552, Comment e.
 {¶ 54} Appellants contest that the trial court improperly relied upon Textron Fin. Corp. v. Nationwide Mut. Ins. Co.
(1996), 115 Ohio App.3d 137, 684 N.E.2d 1261, in finding that a cause of action cannot lie for negligent misrepresentation due to an omission. Appellants maintain that they made a demand that any coverage Lewis provided be of the same or better coverage than the previous policy they had with Danduran. Appellants contend, "when [Lewis] produced a policy he made an affirmative statement that he accepted those terms and procured a policy with the same or better coverage." (Appellant's brief at 16.) By failing to disclose the absence of UIM coverage, appellants contest that Lewis breached his duty, and his actions support a cause of action for negligent misrepresentation. In support of their position, appellants urge us to rely on our holding in Mather v.State Farm Mut. Automobile Ins. Co. (Oct. 4, 1984), Franklin App. No. 83AP-1112.
 {¶ 55} Lewis and Putnam White assert that there is no evidence before the court that Lewis made any claims that appellants had UIM coverage under the Auto-Owners policies procured through Lewis and Putnam White. Relying on Textron Fin.Corp., Lewis and Putnam White indicate that appellants' claim is based solely on Lewis' alleged omission to provide UIM coverage. Further, Lewis and Putnam White argue that Mather is factually distinguishable from this case.
 {¶ 56} In order to prevail on their summary judgment motion, Lewis and Putnam White must identify portions of the record before the trial court to demonstrate the absence of genuine issues of fact on the elements of appellants' negligent misrepresentation claim. Dresher, supra, at 292. Thereafter, the burden shifts to appellants to provide evidence that Lewis made an affirmative false statement that caused their justifiable reliance and otherwise satisfies the above elements. Construing the evidence in appellant's favor, we find that appellants have met their burden to show that genuine issues of material fact exist for their claim for negligent misrepresentation.
 {¶ 57} Mrs. Marasco's deposition testimony sufficiently allows appellants to meet their Civ.R. 56(E) burden as to whether or not Lewis made an affirmative false statement regarding the renewal policy. When Mrs. Marasco questioned Lewis about whether the salvage business would preclude the renewal of the policy, she testified that Lewis responded, "Well, I'll call and explain that to them and everything should be okay. Don't worry about it. (Tr. at 25.) Later in her deposition, Mrs. Marasco stated, "I was clear that the policy was going to lapse until my conversation with Jeff Lewis and he told me that everything would be all right. He would call Auto-Owners, and if there was a problem, he would give me a call back and let me know; and, you know, that never — never heard anything, no letter, no nothing, until my call to him." Id. at 77. Mrs. Marasco claims that based on her conversation with Lewis, she "was under the assumption that [they] had coverage through Auto-Owners" because she did not hear back from him. Id. Lewis and Putnam White presented no conflicting evidence to rebut this testimony. Because Auto-Owners' discovery of the salvage business may have precluded appellants' renewal coverage, whether or not Lewis made an affirmative false statement that he could procure appellants' renewal policy is still at issue.
 {¶ 58} Lewis and Putnam White further contend that there is no evidence in the record that appellants justifiably relied on any alleged statements made by Lewis. As previously indicated, appellants present sufficient evidence to show that genuine issue of fact exists as to whether Lewis made an affirmative false statement to them regarding the procurement of the renewal policy, and that they acted in reliance on the representation. Whether or not appellants were justified in relying on Lewis' alleged representation presented a question of fact that cannot be resolved by summary judgment.
 {¶ 59} Moreover, although the trial court and the parties addressed Mather, supra, we do not find that holding is dispositive of the instant matter. In Mather, we did consider an insurance agent's oral assurances in determining that the trial court's factual findings support a finding of tort liability based upon negligent misrepresentation. However, we find that Mather is factually distinguishable from this case, most importantly because Lewis did not procure appellants' Auto-Owners policy that lapsed in April 2002. As such, we do not have a policy that was in place at the time of the accident for us to consider.
 {¶ 60} Finally, Lewis and Putnam White assert that had they procured the same Auto-Owners policy that lapsed in April 2002, or a substantially similar one, appellants would not have been entitled to UIM benefits as a matter of law. Thus, Lewis and Putnam White contend that appellants have suffered no pecuniary loss because of Lewis' failure to procure the renewal policy in April 2002. However, because Lewis did not procure a renewal of the Auto-Owners policy that lapsed in April 2002, we do not have an Auto-Owners policy that was in place at the time of the accident for us to consider. We cannot speculate as to a nonexistent policy's terms, or that appellants would not have read the renewal policy based on their past behavior. Based on the foregoing, we find that the trial court erred in granting Lewis and Putnam White's motion for summary judgment as to the claim for negligent misrepresentation, as genuine issues of fact exist regarding this claim. Appellants' third assignment of error is sustained.
 {¶ 61} Accordingly, appellants' first and second assignments of error are overruled, and their third assignment of error is sustained. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and remand this cause to that court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
Bryant and Brown, JJ., concur.
[1] Appellants' amended complaint did not delineate a separate cause of action against State Farm, which is not at issue in this appeal.
[2] In its motion for summary judgment, Auto-Owners asserted that appellants' complaint was worded broadly enough that it felt obligated to brief this policy of insurance that was also in effect on the day of Mr. Marasco's accident.
[3] The general definitions section of the policy expressly provides that except as otherwise provided in the policy, terms in boldface type are to be defined in accordance with the definitions contained in the policy.
[4] Although it is not clear, we determine that appellants' argument in their second assignment of error is based on the trial court's resolution of their fraudulent misrepresentation claim as that is the only claim under which the court analyzed the theory of justifiable reliance.
[5] Appellants and the trial court use the term "fraudulent misrepresentation," and Lewis and Putnam White utilize the term "fraud" and "fraudulent misrepresentation" interchangeably in their brief.