**In re BUCKEYE COUNTRYMARK, INC., Debtor.**

**John Paul Rieser, Chapter 7 Trustee in Bankruptcy, Plaintiff,**

**v.**

**Tom Baudendistel, et al., Defendants,**

**v.**

**Fifth Third Bank, et al., Third–Party Defendants.**

**Bankruptcy No. 97–34911.**

**Adversary No. 99–3607.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

July 25, 2000.

---

Frederick A. Sewards, Hammond & Sewards, Columbus, OH, for Farmland Insurance Co. and Nationwide Agribusiness Insurance Co.

Lester Ferguson, Xenia, OH, Ray A. Cox, Cox & Ginger, Dayton, OH, for the Outside Directors.

Robert DeLambo, Auburn, IN, for William Leach.

John Paul Rieser, Rieser & Marx, Dayton, OH, Chapter 7 Trustee.

Alan J. Statman, John J. Schmidt, Cincinnati, OH, for Fifth Third Bank.

Timothy D. McKinzie, McKinzie & Associates, Akron, OH, for Jeffrey L. MacKenzie and Joseph Daly.

## DECISION AND ORDER DENYING SUMMARY JUDGMENT TO THIRD PARTY DEFENDANTS FARMLAND INSURANCE COMPANY AND NATIONWIDE AGRIBUSINESS INSURANCE COMPANY

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

This matter is before the court on the Motion for Summary Judgment filed by Third–Party Defendants, Farmland Insurance Company and Nationwide Agribusiness Insurance Company [Adv. Doc. # 69–1]; the Memorandum Contra filed by Chapter 7 Trustee John Paul Rieser [Adv. Doc. # 74–1]; the Memorandum Contra filed by Defendant Leach [Adv. Doc. # 77–1]; the Response to the Motion for Summary Judgment filed by the Outside Directors [1] [Adv. Doc. # 80–1]; and the Reply Memorandum in Support of the Motion for Summary Judgment filed by Third Party Defendants, Farmland Insurance Company and Nationwide Agribusiness Insurance Company [Adv. Doc. # 82–1]. The following decision is determined in accordance with Fed.R.Bankr.P. 7056.

## BACKGROUND

### A. Procedural History

After the Debtor, Buckeye Countrymark, Inc. ("Debtor"), filed its Chapter 7 bankruptcy petition, the Chapter 7 Trustee filed a Complaint against nine of the Debtor's former directors (called the "Outside Directors"), former manager William Leach ("Defendant Leach") and others alleging that these individuals breached their fiduciary duties causing the Debtor's demise. Subsequently, the Outside Directors and Defendant Leach filed third party complaints against Farmland Insurance Company and Nationwide Agribusiness Insurance Company, asserting entitlement to insurance coverage for the claims brought against them by the Chapter 7 Trustee. The Outside Directors and Defendant Leach base their claim to insurance coverage on a Directors, Officers and Managers Liability Policy ("DOM Policy") purchased by the Debtor pre-petition. On March 7, 2000, Farmland and Nationwide filed a motion for summary judgment against the Outside Directors and Defendant Leach on all counts of the third party complaints. The insurance companies allege that an exclusionary provision within the DOM Policy bars any coverage for the claims brought against the Outside Directors and Defendant Leach by the Chapter 7 Trustee.[2]

### B. Undisputed Facts

Farmland and Nationwide sold the Debtor a DOM Policy, with an original

---

1. As one document, the Outside Directors filed their response to Farmland and Nationwide's motion for summary judgment as well as a cross motion for summary judgment against the insurance companies and a motion for summary judgment against the Chapter 7 Trustee. At this time, only the issues in the Outside Directors response to Farmland and Nationwide's motion are ripe for decision. For this reason, the court will not ad-

dress the motion against the Trustee or cross-motion against Farmland and Nationwide.

2. Farmland and Nationwide have reserved the right to file a subsequent motion for summary judgment against the Chapter 7 Trustee on his January 26, 2000 claims. [Adv. Doc. # 69–1, p. 4.]

"policy period" running from September 1, 1996 through September 1, 1997. [Adv. Doc. # 71–1, attached DOM Policy.] The DOM Policy was to cover "... **loss** as a result of any claim or claims made during the policy period ... against [a] Director, Officer of Manager by way of any **Wrongful Act** when such Director, Officer or Manager is not entitled to indemnification by the Insured." [*Id.*, Section 1.] In addition, the Policy covered, "[t]he Insured ... [for] **loss** as a result of any claim or claims made ... against each and every Director, Officer or Manager by reason of any **Wrongful Act,** for which the Insured may be required or permitted by law to indemnify such Director, Officer or Manager." [*Id.*]

At issue in Farmland and Nationwide's motion for summary judgment is the policy's exclusionary provision which provides, in pertinent part:

## IV. EXCLUSIONS

The insurer shall not be liable to pay **Loss** in connection with any claim made against the Directors, Officers or Manager:

. . . .

15. ... which is brought by or on the behalf of the Insured[.]

[*Id.*, Section IV. 15.] The Debtor, Buckeye Countrymark, Inc., is named as the "Insured" in this policy. [*Id.*, Declaration Page and Definitions Section.] Under this exclusionary provision, Farmland and Nationwide assert that claims brought against directors, officers or managers by the Debtor (called "insured vs. insured" claims) are specifically excluded from insurance coverage. They allege that this same policy provision excludes the Chapter 7 Trustee's claims which are only extensions of claims which could be brought by the Debtor outside of bankruptcy. The application of the DOM Policy's exclusionary provision to the Chapter 7 Trustee's claims is the movants' sole basis for summary judgment.

## *SUMMARY JUDGMENT STANDARD*

The appropriate standard to be used by the court to address Farmland and Nationwide's motion for summary judgment is contained in Fed.R.Civ.P. 56(c) and incorporated in bankruptcy by reference in Fed.R.Bankr.P. 7056. Rule 56(c) states in part that a court must grant summary judgment to the moving party if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all elements of its claim on which it carries the burden of proof. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir. 1975). Thereafter, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–588, 106 S.Ct. 1348.

## *LEGAL ANALYSIS*

### A. Choice of Law

 Whether the DOM Policy's exclusionary provision bars insurance coverage for the Trustee's claims against the Outside Directors and Defendant Leach is, in part, a matter of contract interpretation requiring the court to apply the appropriate state law. Therefore, a preliminary issue the court must address is which state's law to apply. Had the parties provided a choice of law provision within the

insurance contract, this court would normally apply the law chosen therein. *See Briggs Elec. Contracting Services, Inc. v. Elder–Beerman Stores Corp.,* 221 B.R. 404, 407 (Bankr.S.D.Ohio 1998). As no such provision exists, the court must use a significant contacts test to determine which state law to apply.[3]

▋ Under a significant contacts analysis, the court must look at which state bears the most substantial relationship to the insurance contract based on the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract and the place of business of the parties. *See Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 473 N.E.2d 807, 808 (Ohio 1984); *Enterprise Group Planning, Inc. v. Falba,* No. 94–3827, 1995 WL 764117, at *2 (6th Cir. Dec. 27, 1995). In this case, Farmland and Nationwide agreed to provide insurance to Buckeye Countrymark, an Ohio business which owns and operates grain elevators and sells farming supplies in Ohio. [Adv. Doc. # 67–1 ¶ 7; Adv. Doc. # 1–1, ¶ 10.] In addition, although the insurance contract contains no choice of law provision, the contract does mention Ohio law in the heading of an endorsement to the policy which reads "Ohio Changes—Cancellation and Nonrenewal." [Adv. Doc. # 71–1, attached DOM Policy.] Further, all parties have pleaded the issues on summary judgment under Ohio law showing their intent that Ohio law govern the contract's interpretation. The court concludes that Ohio has the most significant contacts with the insurance contract at issue.

**B. Construction of an Insurance Contract**

▋ Before embarking on the interpretation of the exclusionary provision and its application to the Trustee's claims, the court would note some key rules guiding the construction of an insurance contract. Under Ohio law, courts are "required to interpret the contract in such a way as to give effect to the intention of the parties at the time the agreement was entered into, as evidenced by the provisions of the contract." *Watkins v. Brown,* 97 Ohio App.3d 160, 163, 646 N.E.2d 485, 487 (Ohio Ct. App.1994). However, because it is typically the insurance carrier that drafts the policy, ambiguous language is construed in the way most favorable to the insured. *United States Fidelity & Guaranty Co. v. Lightning Rod Mutual Ins. Co.,* 80 Ohio St.3d 584, 586, 687 N.E.2d 717, 719 (Ohio 1997) (requiring that ambiguity within an insurance contract be construed strictly against the insurer and liberally in favor of the insured); *Watkins,* 97 Ohio App.3d at 164, 646 N.E.2d at 487.

▋ This general policy applies with even greater force to exclusionary provisions. *Watkins,* 97 Ohio App.3d at 164, 646 N.E.2d at 487. Thus, if an exclusionary clause "will reasonably admit of an

---

**3.** As this court has noted in a previous decision, no precedent clearly establishes whether the choice of law rules of the forum state (Ohio) or federal common law should govern the determination of which state law applies to issues in a bankruptcy case. *See Briggs Elec. Contracting Services, Inc. v. Elder–Beerman Stores Corp. (In re Elder–Beerman Stores Corp.),* 221 B.R. 404, 407–408 (Bankr. S.D.Ohio 1998). *See also Limor v. Weinstein & Sutton (In re SMEC, Inc.),* 160 B.R. 86, 89–90 (M.D.Tenn.1993) (noting both the United States Supreme Court and the Sixth Circuit have provided only ambiguous guidance in this area). Since bankruptcy jurisdiction arises under federal statutory law rather than by diversity, forum state choice of law rules are not required. However, because both federal common law and Ohio choice of law rules mandate a most significant contacts or relationship test, this court need not choose between the two. *Enterprise Group Planning, Inc. v. Falba,* No. 94–3827, 1995 WL 764117, at *2 (6th Cir. Dec. 27, 1995) (employing a "significant contacts" test under federal choice of law principles derived from federal common law); *Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 287, 473 N.E.2d 807, 810 (Ohio 1984) (noting that in the absence of a choice of law provision in a contract, the court should use the law of the state that bears the most significant relationship to the contract).

interpretation that would preserve coverage for the insured, then as a matter of law, the court is bound to adopt the construction that favors coverage." *Id. See also United States Fidelity,* 80 Ohio St.3d at 586, 687 N.E.2d at 719 (requiring that an exclusion from liability be clear and exact in order to be given effect). At the same time, if an exclusionary clause has only one reasonable interpretation, a court is bound to enforce the provision accordingly. *Watkins,* 97 Ohio App.3d at 164, 646 N.E.2d at 487.

### C. Analysis of Coverage Under the Insurance Contract

■ Farmland and Nationwide must prove that the "insured vs. insured" exclusionary provision within the insurance contract bars claims by the Trustee against the Debtor's officers, managers and directors. The significant language of the provision excludes coverage for two types of claims: those brought "by" and those brought "on the behalf of" the Debtor against its directors, officers or managers. [Adv. Doc. # 71–1, attached DOM Policy, Section IV. 15.] Farmland and Nationwide argue that the Trustee's claims against the Outside Directors and Defendant Leach are only extensions of claims that could have been brought "by" or "on the behalf of" the Debtor outside of bankruptcy. Therefore, Farmland and Nationwide argue, the Trustee's claims are barred from coverage under the exclusionary provision to the same extent that the Debtor's claims would be.

■ First, Farmland and Nationwide argue that the language excluding claims brought "by" the Debtor applies to exclude claims brought by the Trustee who "stands in the shoes" of the Debtor with regard to its legal rights and obligations. *See Sender v. Buchanan (In re Hedged–Investments Associates, Inc.),* 84 F.3d 1281, 1285 (10th Cir.1996); *Reliance Insurance Co. of Illinois v. Weis,* 148 B.R. 575, 581 (E.D.Mo.1992), *aff'd,* 5 F.3d 532 (8th Cir. 1993). However, their argument ignores the very real differences between the Trustee and the Debtor. First and foremost, a bankruptcy trustee is a separate legal entity that neither represents the Debtor nor owes the Debtor a fiduciary obligation. *In re Bashour,* 124 B.R. 52, 54 (Bankr.N.D.Ohio 1991). Instead, the Trustee's responsibility is to the bankruptcy estate that he or she represents. 11 U.S.C. § 323(a); *Bashour,* 124 B.R. at 54. As such, the Trustee and the Debtor often take adversarial positions. *See, e.g.,* 11 U.S.C. § 704 (providing that it is among the Trustee's duties to investigate the financial affairs of the Debtor and oppose the discharge of the Debtor when warranted). In these respects, the Trustee and the Debtor are neither the same entity nor alter egos of each other. *Pintlar Corp. v. Fidelity and Casualty Co. of New York (In re Pintlar Corp.),* 205 B.R. 945, 947 (Bankr.D.Idaho 1997), *aff'd, CIGNA Ins. Co. v. Gulf USA Corp.,* Case No. CV 97–250–N–EJL, 1997 WL 1878757 (D.Idaho September 11, 1997). Acknowledging that ambiguous contract terms should be construed liberally in favor of the insured, the court holds that a claim brought "by" the Trustee is not the same as a claim brought "by" the Debtor under the DOM Policy's exclusionary provision. *Id.*

Similarly, the contract language excluding coverage for claims brought "on behalf of" the Debtor does not apply to exclude the Trustee's claims. As noted previously, the Trustee represents the bankruptcy estate and not the Debtor. 11 U.S.C. § 323(a); *Bashour,* 124 B.R. at 54. As representative of the estate, the Trustee brings his claims on behalf of the Debtor's creditors rather than on behalf of the Debtor making this exclusionary language inapplicable to the Trustee's claims. *Pintlar,* 205 B.R. at 948. *See also American Casualty Co. of Reading, Pennsylvania v. Federal Savings and Loan Ins. Corp.,* 704 F.Supp. 898, 901 (E.D.Ark.1989).

■ Further, the very purpose of an "insured vs. insured" exclusion does not apply to adversarial claims brought by the

Trustee against the Debtor's directors, officers and managers. The intent behind an "insured vs. insured" exclusion in a DOM Policy is to protect insurance companies against collusive suits between the insured corporation and its insured officers and directors. *Fidelity and Deposit Co. of Maryland v. Zandstra*, 756 F.Supp. 429, 431 (N.D.Cal.1990). When the plaintiff is not the corporation but a bankruptcy trustee acting as a genuinely adverse party to the defendant officers and directors, there is no threat of collusion. *See Zandstra*, 756 F.Supp. at 432 (concluding that the FDIC, acting as receiver for a failed institution in claims against the institution's officers and directors, carried no threat of collusion and did not fall under the intent of the "insured vs. insured" exclusion). Under these circumstances, an "insured vs. insured" exclusion does not excuse the insurance companies from coverage. *Id.*

### CONCLUSION

In summary, the Trustee does not represent the Debtor nor is the Trustee acting on the Debtor's behalf in this litigation. Instead, the Trustee brings his claims as a separate legal entity acting on behalf of the bankruptcy estate and the estate's creditors. Mindful of the rule of construction requiring the court to construe ambiguous language in an exclusionary provision liberally in favor of coverage, the court concludes that the insurance contract provision excluding coverage for claims brought "by" or "on the behalf of" the Debtor does not apply to exclude coverage for claims brought by the Chapter 7 Trustee. Therefore, Farmland and Nationwide's motion for summary judgment is denied.

**It is so ordered.**