**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

VERIZON COMMUNICATIONS INC., )
NYNEX LLC, VERIZON NEW )
ENGLAND INC., VERIZON )
INFORMATION TECHNOLOGIES )
LLC. )      C.A. No. N18C-08-086 EMD CCLD
    Plaintiffs, )
         )
   v. )
         )
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA, XL )
SPECIALTY INSURANCE COMPANY, )
NATIONAL SPECIALTY INSURANCE )
COMPANY, U.S. SPECIALTY )
INSURANCE COMPANY, AXIS )
INSURANCE COMPANY, and ST. )
PAUL MERCURY INSURANCE )
COMPANY, )
         )
    Defendants. )

Submitted:  March 11, 2021
Decided: March 16, 2021

**ORDER REFUSING TO CERTIFY DEFENDANTS' APPLICATION
FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

This 16th day of March, 2021, upon consideration of Defendants' Application for

Certification of an Interlocutory Appeal (the "Application")[1] filed by Defendants National Union

Fire Insurance Company of Pittsburgh, PA Company ("National Union"), XL Specialty

Insurance Company ("XL Specialty"), U.S. Specialty Insurance Company ("U.S. Specialty"),

National Specialty Insurance Company ("National Specialty"), St. Paul Mercury Insurance

Company ("St. Paul Mercury"), and AXIS Insurance Company ("AXIS") (collectively, the

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Opinion.

"Insurers") on March 5, 2021;[2] Plaintiff's Opposition to the Insurers' Application for Certification of Interlocutory Appeal (the "Response") filed by the Plaintiffs Verizon Communications Inc. ("Verizon"), NYNEX, LLC, Verizon England, Inc. and Verizon Information Technologies, LLC (collectively, the "Insureds") on March 11, 2021;[3] the Court's Opinion[4] dated February 23, 2021 (the "Opinion");[5] Supreme Court Rule 42 ("Rule 42"); and this civil action's entire record:

## INTRODUCTION

1.      This civil action involves breach of contract and declaratory claims brought by the Insureds against the Insurers.  The Insureds allege that the Insurers wrongfully denied coverage for expenses incurred from a fraudulent transfer lawsuit prosecuted by a bankruptcy trustee (the "*Fairpoint* Action").

2.      The Insureds filed their Complaint against the Insurers on August 10, 2018.[6]  The Insureds amended the Complaint on April 28, 2018.[7]  The Insureds sought breach of contract damages and declarations that the *FairPoint* Action and its defense fees are covered.[8]

3.      The Insurers filed a motion to dismiss, or alternatively to stay the action on September 21, 2018.[9]  The Court denied the motion to dismiss, or alternatively to stay the action on April 26, 2019.[10]  No party moved for reconsideration of the Court's decision on the motion to dismiss or made an application for interlocutory appeal.

---

[2] D.I. No. 142.
[3] D.I. No. 147.
[4] D.I. No. 206.
[5] *Verizon Commc'ns Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2021 WL 710816 (Del. Super. Feb. 23, 2021).
[6] D.I. No. 1
[7] D.I. No. 5.
[8] Compl. ¶¶ 63-71 (breach of contract allegations); 72-83 (declaratory judgment allegations).
[9] D.I. No 20.
[10] D.I. No. 62.

4.      The Insurers each filed individual answers on May 24, 2019.[11]

5.      National Union sold two relevant insurance policies: (i) a primary policy for the Policy Period of October 31, 2009 to October 31, 2010 (the "Verizon Policy"); and (ii) a primary policy for the Policy Period of March 31, 2008 to March 31, 2014 (the "FairPoint Policy") (collectively the "Policies").[12] U.S. Specialty, AXIS and St. Paul Mercury issued excess coverage that follows form to the primary Verizon Policy.[13] XL Specialty and National Specialty issued excess coverage that follows form to the primary FairPoint Policy.[14] The Policies are virtually identical.[15] The Policies were negotiated, in part, to reduce the Insureds' exposure to liabilities arising from transactions executed by and between Verizon, FairPoint Communications, Inc. ("FairPoint"), and Northern New England Spinco Inc. ("Spinco").[16]

6.      The Policies covered Securities Claims.[17] The Policies define a Securities Claim to include "a Claim," except for administrative or regulatory proceedings maintained against or investigations of an "Organization," "made against any Insured" –

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities which is:

(a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or

(b) brought by a security holder of an Organization with respect to such security holder's interest in securities of such Organization; or

(2) brought derivatively on behalf of an Organization by a security holder of such Organization.[18]

---

[11] D.I. Nos. 67-72
[12] *Verizon Commc'ns Inc.*, 2021 WL 710816, at *1 (Del. Super. Feb 23, 2021).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See id.*, at *2.
[18] *Id.*

7.     The Policies define "Insured" to include an "Organization, but only with respect to a Securities Claim."[19] The Verizon Policy defines "Organization" to include Verizon and its subsidiaries that exist "on or before" the Policy Period.[20] The FairPoint Policy defines "Organization" to include Verizon, FairPoint, and their subsidiaries that exist "on or before" the Policy Period."[21] The Policies define "Loss" to include damages, settlements, judgments and "Defense Costs."[22] And the Policies define "Defense Costs" to include "reasonable and necessary fees, costs and expenses … resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against any Insured."[23]

8.     Following a "reverse Morris trust" merger and asset sale (the "Transaction") involving Verizon, Spinco and FairPoint that left FairPoint with considerable debt, FairPoint filed a Chapter 11 petition under the federal Bankruptcy Code.[24] FairPoint confirmed a plan of reorganization that created a trust with an appointed trustee (the "Trustee") empowered to pursue litigation.[25] The Trustee was "a successor to [FairPoint] and a representative of [its] estate[.]"[26] The Trustee was authorized to pursue FairPoint's creditors' causes of action.[27] Any causes of action were "vested in [FairPoint's] estate."[28] Those causes of action included Spinco causes of action.[29]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at *2-3.
[25] *Id.* at *3.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

9. On October 25, 2011, the Trustee brought an action under federal and state law against Verizon.[30] The Trustee sought to avoid alleged actual and constructive fraudulent transfers connected to the Transaction.[31] The Trustee alleged that FairPoint was insolvent at the time of the Transaction.[32] The Trustee sought relief from transfers executed between Verizon, Spinco and FairPoint together and separately.[33]

10. As early as October 4, 2010, the Insureds provided notice to the Insurers regarding coverage for a tax dispute between the Insureds and FairPoint's bankruptcy estate.[34] On December 16, 2010, National Union declined coverage because National Union claimed that the tax dispute was not a Securities Claim.[35] Once the *FairPoint* Action was filed, the Insureds provided additional notice to the Insurers regarding coverage.[36] National Union reiterated its position that the *FairPoint* Action did not state a Securities Claim in a January 11, 2012 letter.[37] The other Insurers adopted National Union's position.[38] Nevertheless, the Insureds continued to update the Insurers on the *FairPoint Action*.

11. In the early summer of 2014, the Insureds notified the Insurers that the Insureds had settled the *FairPoint* Action.[39] The Insureds settled the *FairPoint* Action for $95 million and incurred approximately $24 million in defense fees.[40] The Insureds invoiced the Insurers for

---

[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*

5

these amounts during the *FairPoint* Action.[41]  The Insurers did not pay any defense costs or otherwise indemnify the Insureds.[42]

12.     The Insureds moved (the "Insureds Motion") for partial summary judgment on the issue of indemnification and defense costs related to the *FairPoint* Action on March 6, 2020.[43] On March 9, 2020, the Insurers moved (the "Insurers Motion") for judgment on the pleadings as to coverage relating to the *FairPoint* Action.[44]  The Court held a hearing on the Motions on November 16, 2020.[45]  At the conclusion of the hearing, the Court took the matter under advisement.  On February 23, 2021, the Court issued the Opinion.  The Court granted the Insureds Motion and denied the Insurers Motion.[46]

13.     On February 23, 2021, the Court issued the Opinion.  The Court granted the Insureds Motion and denied the Insurers Motion.[47]  The Court held that, under its plain language, the FairPoint Policy covered the *FairPoint* Action as a Securities Claim.  The Court also found that Verizon's defense costs were reasonable as a matter of law and covered under the FairPoint Policy.  While the Insureds did not seek coverage under the Verizon Policy, the Court found that "Verizon could have reasonably expected that any Spinco-related liabilities" would be covered by the Verizon Policy.[48]

14.     The Insurers have now applied, under Rule 42, for certification of an interlocutory appeal of the Opinion.  The Insurers argue that the Court improperly focused on the theory of liability, and not on the nature of the injury to determine that the *FairPoint* Action was a

---

[41] *Id.*
[42] *Id.*
[43] D.I. No. 95.
[44] D.I. No. 100.
[45] D.I. No. 130.
[46] *Verizon Commc'ns Inc.*, 2021 WL 710816, at *19 (Del. Super. Feb. 23, 2021).
[47] *Id.* at *19.
[48] *Id.* at *15.

derivative claim covered by the FairPoint Policy. The Insurers also argue that the Opinion did not recognize the distinction between the estate and the debtor. The Insurers contend that the Application meets the criteria listed in Rules 42(b)(i)[49] and 42(b)(iii)(B), (G) and (H).[50] The Insureds oppose certification, arguing that the Opinion does not decide a substantial issue of material importance[51] and satisfies none of the Rule 42(b)(iii) factors.[52]

## APPLICABLE STANDARD

15.     Rule 42(b) dictates the standard for certifying an interlocutory appeal. "No interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[53] In deciding whether to certify an interlocutory appeal, the trial court must consider: (1) the eight factors listed in Rule 42(b)(iii);[54] (2) the most efficient and just schedule to resolve the case; and (3) whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.[55] "If the

---

[49] App. at 5-6.
[50] *Id.* at 6-10.
[51] Res. at 4-7.
[52] *Id.* at 7-13.
[53] Del. Supr. Ct. R. 42(b)(i).
[54] Delaware Supreme Court Rule 42(b)(iii) provides that the trial court should consider whether:
    (A) The interlocutory order involves a question of law resolved for the first time in this State;
    (B) The decisions of the trial courts are conflicting upon the question of law;
    (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;
    (D) The interlocutory order has sustained the controverted jurisdiction of the trial court;
    (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice;
    (F) The interlocutory order has vacated or opened a judgment of the trial court;
    (G) Review of the interlocutory order may terminate the litigation; or
    (H) Review of the interlocutory order may serve considerations of justice. *See* Del. Supr. Ct. R. 42(b)(iii).
[55] *Id.*

balance [of these considerations] is uncertain, the trial court should refuse to certify the interlocutory appeal."[56]

## DISCUSSION

16.     Initially, the Court must determine if the Opinion "decides a substantial issue of material importance that merits appellate review before a final judgment."[57]  The "substantial issue of material importance" prong of Rule 42 requires that the matter decided goes to the merits of the case.[58]  The Insureds contend that the Opinion decided several "substantial issues" because reversal of the Court's opinion could terminate the litigation in whole or in part.[59]

17.     The Court does not conclude that the Opinion is of a nature warranting interlocutory review.  The Supreme Court has before refused to entertain interlocutory appeals of decisions in contract cases.[60]  This is because "[a]s a general matter, issues of contract interpretation are not worthy of interlocutory appeal."[61]  The Opinion addresses unambiguous contractual language in an insurance contract applying accepted principles of Delaware law. While the Court agrees that the Opinion grants partial summary judgment in favor of the Insureds, this does not necessarily create a "substantial issue of material importance" out of a mere contract dispute.[62]

---

[56] *Id.*

[57] Del. Supr. Ct. R. 42(b)(i).

[58] *Id.*

[59] App. at 5.

[60] *See, e.g., Lexington Ins. Co. v. Almah LLC*, 167 A.3d 499 (Del. 2016) (refusing to grant interlocutory appeal of a Delaware Superior Court decision addressing cross-motions for summary judgment in an insurance coverage dispute turning on issues of contract interpretation); *Robino-Bay Court Plaza, LLC v. W. Willow-Bay Court, LLC*, 941 A.2d 1019 (Del. 2007) (refusing to grant interlocutory appeal when the underlying issue was one of Delaware contract interpretation).

[61] *REJV5 A WH Orlando, LLC v. A WH Orlando Member, LLC*, 2018 WL 1109650, at *3 (Del. Ch. Feb. 28, 2018), *appeal refused*, 182 A.3d 115 (Del. 2018).  *See also Steadfast Ins. Co. v. DBI Servs., LLC*, 2019 WL 3337127 (Del. Super. July 25, 2019).

[62] *McKnight v. USAA Cas. Ins. Co.*, 872 A.2d 959 (Del. 2005) (affirming the Delaware Superior Court's refusal to certify an interlocutory appeal because "while the particular exclusion at issue ha[d] not previously been interpreted in Delaware, the trial court applied well-established principles of contract interpretation and thus the case did not involve a matter of first impression.").

8

18. The Opinion, however, did grant judgment in favor of the Insureds on several dispositive issues. The Court finds, at the very least, this means a legal right has been established by the Opinion and will therefore address the Application's Rule 42(b)(iii) arguments.[63]

19. The Court must consider all eight factors in Rule 42(b)(iii), but "[a]fter considering these factors and its own assessment of the most efficient and just schedule to resolve the case, [the Court] should identify whether and why the likely benefits ... outweigh the probable costs, such that interlocutory review is in the interests of justice."[64] The Insurers maintain that the Application meets the criteria set forth in Rules 42(b)(iii)(B), (G) and (H).

20. On Rule 42(b)(iii)(B), the Insureds contend that the Opinion conflicts with other trial court decisions by finding that the Trustee's fraudulent transfer claims were derivative when (i) the Court focused on the theory of liability, not the nature of the injury and (ii) by equating the estate and the debtor.[65] First, the Insureds rely upon the proposition that, under *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), "a court should look to the nature of the wrong and to whom the relief should go," to determine whether a claim is derivative.[66] While this properly states the approach Delaware courts apply to determine whether a stockholder action is derivative, this case concerns a claim brought by a bankruptcy

---

[63] *Cf. Laventhol, Krekstein, Horwath and Horwath v. Tuckman,* 372 A.2d 168, 171 (Del.1976) (legal right at issue when order enlarged an exception to generally followed rule in determining whether to apply a statute of limitations, and ruling obliged the appealing defendants to go to trial on the complaint); *Price v. Wilmington Trust Co.,* 1996 WL 560177, at *2 (Del.Ch. Sept.3, 1996) (timeliness of the claim implicated both substantial issue and right not to be put to the expense of trial); *Cochran v. Stifel Financial Corp.,* 2000 WL 376269 (Del.Ch. Apr.6, 2000) (denial of a motion to dismiss on statute of limitations grounds determines a substantial issue and establishes a legal right); *but see Scharf v. Edgcomb Corp.,* Del. Ch., C.A. No. 15224, Mem. Op., 1997 Del. Ch. Lexis 169, 1997 WL 762656 Steele, V.C. (Dec. 2, 1997), *appeal denied,* Del. Supr ., No. 1,  1998, 705 A.2d 243, 1998 Del. Lexis 9, 705 A.2d 243 (Jan. 14, 1998) (unpublished order) (court's ruling that a specific affirmative defense was not available, did not establish a legal right between the parties and, therefore, was not appropriate for interlocutory review).
[64] Del. Supr. Ct. R. 42(b)(iii).
[65] App. at 6-8.
[66] *Tooley*, 845 A.2d at 1039 (Del. 2004).

9

trustee on behalf of a debtor's estate.[67] The Court, therefore, followed precedent related to claims brought by bankruptcy trustees to determine that the Trustee's claim is derivative.[68]

21. The Opinion also does not conflict with "decisions recognizing the foundational bankruptcy distinction between the estate and debtor."[69] The Opinion relied upon Third Circuit precedent and the Bankruptcy Code to conclude that the Trustee brought its claim on behalf of FairPoint.[70] *In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio Jul. 25, 2000) did not concern a contract like the FairPoint Policy, which contained a provision guaranteeing the Insurers' obligations survived FairPoint's bankruptcy. Furthermore, Delaware courts cannot resolve any purported conflicts between *In re Buckeye Countrymark, Inc.* and Third Circuit precedent.

22. The other cases cited by the Insurers are inapposite. *In re Edwards*, 2003 WL 22110778 (Bankr. E.D. Pa. Aug. 28, 2003) draws a distinction between the debtor and estate for the purposes of discharge from tax liability under 11 *U.S.C.* § 505(b) but does not speak to whether claims are brought derivatively.[71] *Cirka v. National Union Fire Insurance Company of Pittsburg, PA*, 2004 WL 1813283 (Del. Ch. Aug. 6, 2004) explained that, absent a trustee, the Bankruptcy Code sets up "a two-player system" where the debtor is managed by a debtor in possession which is in turn overseen by committees, including a creditors' committees.[72] *Cirka*

---

[67] *See Verizon Commc'ns Inc.*, 2021 WL 710816, at *3 (Del. Super. Feb. 23, 2021).
[68] *See id.* at *10 (Following *In re Wilton Armetale, Inc.*, 968 F.3d 278, 282-83 (3d Cir. 2020) to determine that the Trustee's claim was derivative by establishing (1) that the Trustee's claim attached before bankruptcy was filed and (2) that it was a general claim belonging to the estate).
[69] App. at 7.
[70] *See Verizon Commc'ns Inc.*, 2021 WL 710816, at *12-*14 (Del. Super. Feb. 23, 2021) ("[T]he trustee 'represent[s]' the estate 'with the capacity to sue and be sued *on its behalf.*'") ("Unless the debtor fully liquidates, there is no practical difference between the debtor and the interest it becomes when the petition is filed.") (Citing *In re Wilton Armetale, Inc.*, 968 F.3d at 281, 284 (3d Cir. 2020)).
[71] *See generally In re Edwards*, 2003 WL 22110778, at *2 (Bankr. E.D. Pa. Aug. 28, 2003)
[72] *Cirka*, 2004 WL 1713283, at *5 (Del. Ch. Aug. 6, 2004).

held that a committee brought derivative suits on behalf of the estate, not on behalf of the debtor in possession but did not speak to whether a committee brought a claim on behalf of a debtor.[73]

23. While the Court considered bankruptcy and corporate law principles when applying the facts to the relevant policies, the underlying issue addressed in the Opinion was a question of contract interpretation. Generally, "issues of contract interpretation are not worthy of interlocutory appeal."[74] The Court's use of bankruptcy and corporate law principles when addressing the parties' arguments on the FairPoint Policy does not turn this case into a bankruptcy and corporate law dispute.

24. Finally, the Court does not agree that finding the Defense Costs reasonable conflicts with other trial court opinions. The Insurers argue that they did not waive their defense of reasonableness. The Court considered the Insurers reasonableness argument and found that the Insurers raised no genuine issue of material fact by failing to contest reasonableness at any point and essentially requesting the Court to audit the Insured's counsel's billable hours. The Court is unaware on any trial court decisions that conflict with the Court's approach in the Opinion.

25. Rule 42(b)(iii)(G) also does not weigh in favor of interlocutory appeal because no issue raised by the Insurers would necessarily terminate the litigation in its entirety.[75] The Insureds Motion only concerned the FairPoint Policy, and the Insureds could still seek coverage under the Verizon Policy even if the interlocutory appeal were successful. Equally, the Insurers Motion concerned only the Verizon Policy and if successfully appealed, the Insured could still

---

[73] *Id.* at *7.

[74] *Rite Aid Corp. v. Ace Am. Ins. Co.*, 2020 WL 6058294 (Del. Super. Oct. 13, 2020).

[75] *See Energy Transfer Equity, L.P v. Twin City Fire Ins. Co.*, 2020 WL 6112299, at *4 (Del. Super. Oct. 16, 2020) (Denying interlocutory appeal when successful interlocutory appeal on an issue would necessarily terminate litigation in its entirety and allow causes of action to go forward against other defendants).

11

seek coverage under the FairPoint Policy. Finally, if the appeal were successful with respect to the reasonableness damages, then the Insureds' counsel correctly notes that "protracted litigation" would result over the Insureds' counsel's invoices.[76]

26.     On Rule 42(b)(iii)(H), the Insurers contend numerous considerations of justice support certification.  First, the Insurers argue that immediate review "will 'advance the termination of litigation' and 'save substantial time and expense.'"[77]  Second, the Insurers argue that the Opinion concerns tens of millions of dollars in insurance coverage and the Opinion may lead to Delaware insureds bearing increased insurance costs.[78]  Finally, the Insurers argue that an immediate appeal may obviate the need for a civil trial conducted during the ongoing Covid-19 pandemic.[79]

27.     First, as explained before, there is no indication that reversal of any single issue would end litigation, therefore it is unlikely that certifying interlocutory appeal would terminate the litigation or foreclose trial.

28.     Second, amount in controversy does not, alone, satisfy the considerations of justice standard.[80]  "The Court considers each issue before it despite the dollar amount owed."[81] The amount in controversy would have to be coupled with some type of irreparable harm.[82]  The underlying litigation is complete.  The Insurers are not looking at reimbursable defense costs or

---

[76] Res. 11.
[77] App. at 9 (citing *Rhone-Poulence Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 194 n. 1 (Del. 1992).
[78] *Id.* at 9-10.
[79] *Id.* at 10.
[80] *See Rite Aid Corp. v. Ace Am. Ins. Co.*, 2020 WL 6058294, at *3 (Del. Super. Oct. 13, 2020).
[81] *Id.*
[82] *Ace Am. Ins. Co. v. Rite Aid Corp.*, No. 339,2020 (Del. Dec. 1, 2020) (controversy existed on whether defense costs advanced in ongoing litigation could be recouped by the insurers after advancement and before a determination of an indemnifiable claim).

alike. Furthermore, while the Insurers may have to pay a significant amount under the FairPoint Policy, the Insureds have "as much to complain about with respect to cost as do" the Insurers.[83]

29.     The Court should find that review of an interlocutory order serves considerations of justice under Rule 42(b)(iii)(H) when the party applying for interlocutory review is in peril of irreparable harm and the other party is not.[84]  A court should not certify an interlocutory appeal on a legal issue if there is "no particular urgency to litigating the issue before a final judgment" is entered, even if the issue is novel.[85]  For example, such urgency exists if denying an injunction would effectively terminate a parties' rights under an agreement or create hardship to a party outside its control.[86]  The Insurers will not suffer any irreversible prejudice if they must wait until after trial to appeal the Court's decisions in the Opinion.

30.      The Insurers argue that review of the Opinion may serve considerations of justice and outweigh probable costs.  The Court does not believe that certification would promote the most efficient and just schedule to resolve this case.  "Interlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[87]  This case is not exceptional, nor does it involve a substantial issue of material importance.

31.     For the reasons set forth above, the Court does not believe that the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.  If "the Opinion likely will be the subject of an eventual appeal," as asserted

---

[83] *Id.*
[84] *See DG BF LLC v. Ray*, 2020 WL 4720685, at *2 (Del. Aug. 13, 2020) (Affirming Court of Chancery's finding that considerations of justice did not support certification when one party would face irreparable harm from denying certification and one party would face irreparable harm from approving certification). *See also Ace Am. Ins. Co. v. Rite Aid Corp.*, No. 339,2020 (Del. Dec. 1, 2020).
[85] *In re: Shawe & Elting LLC*, 2016 WL 279400, at **1 (Del. Jan. 22, 2016).
[86] *See Tracker Marine, L.L.C. v. Pena*, 2017 WL 3124440, at *1 (Del. Jul. 24, 2017)
[87] Del. Supr. Ct. R. 42(b)(ii).

by the Insurers, then any issues may be raised then.[88] Appealing the Opinion at this point will also not "clarify fundamental principles of corporate and bankruptcy law."[89] The Opinion interpreted the Policies according to standard contract law principles and only used corporate and bankruptcy principles to the extent necessary to interpret the Policies.

32. "If the balance [of these considerations] is uncertain, the [Court] should refuse to certify the interlocutory appeal."[90] Accordingly, the Court finds that the Insurers have not met Rule 42's strict standards for certification.

## CONCLUSION

**IT IS HEREBY ORDERED** that certification to the Supreme Court of the State of Delaware for disposition in accordance with Rule 42 is **REFUSED.**

Dated: March 16, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServXpress

---

[88] App. at 10.
[89] *Id.*
[90] Del. Supr. Ct. R. 42(b)(iii).

14